Frances A. Smith SBN 24033084
ROSS & SMITH, PC
700 North Pearl Street, Suite 1610
Dallas, Texas 75201
(214) 377-7879 Telephone
(214) 214-593-4976
Frances.smith@judithwross.com
**ATTORNEY FOR DEFENDANTS**

IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF
TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| CESAR ALCOCER and § | CASE NO: 18-32801-sgj-7 | |
| MARIA ANTONIA ALCOCER, § | | |
| § | | |
| <u>DEBTORS</u> § | (Chapter 7) | |
| § | | |
| SCOTT M. SEIDEL, TRUSTEE § | | |
| Plaintiff § | | |
| § | | |
| v. § | ADV. PROC. NO. 19-03104-sgj | |
| § | | |
| ROZMEEN BHAI, ISMAIL BHAI, § | | |
| AND RAHEEL BHAI, § | | |
| Defendants § | | |

**<u>DEFENDANTS' ROZMEEN BHAI, ISMAIL BHAI,
AND RAHEEL BHAI'S MOTION TO DISMISS
PLAINTIFF'S ORIGINAL COMPLAINT</u>**

Defendants Rozmeen Bhai, Ismail Bhai, and Raheel Bhai (collectively, the "Defendants") file this their Motion to Dismiss Plaintiff's Original Complaint and respectfully represent as follows:

**I.    SUMMARY**

1.    Defendants file this Motion to Dismiss Plaintiff's Original Complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure made applicable in this bankruptcy case (the "Bankruptcy Case") by Federal Rule of Bankruptcy Procedure Rule 7012. Plaintiff Scott M. Seidel (the "Trustee"), the Chapter 7 Trustee of the estate (the "Estate") of Cesar and Maria Alcocer (collectively, the "Debtors") filed the against the Defendants alleging nine causes

DEFENDANTS' MOTION TO DISMISS- 1

of action, all of which non-core matters based on state law.  The Court should dismiss Plaintiff's claims because the Court does not have subject matter jurisdiction to enter final orders on the claims alleged in the Complaint.  *Stern v. Marshall*, 131 S.Ct. 2594 (2011).  In addition, the Court should dismiss the Complaint because the Plaintiff has failed to provide fair notice of the nature of Plaintiff's claims and plausible factual allegations to support Plaintiff's claims.  As to the fraud claims, the Plaintiff has failed to meet the heightened pleading standard for failure to plead them particularity as required by Rule 9 of the Federal Rules of Civil Procedure made applicable in this case by Federal Rule of Bankruptcy Procedure 7009.

## II.    JURISDICTION AND VENUE

2.    In the Complaint, the Plaintiff alleges nine causes of action: (1) common law fraud, fraudulent inducement, fraud by nondisclosure/omission, statutory fraud, liability under the Texas Theft Liability Act, money had and received, conversion, accounting, and breach of contract.  All nine of these causes of action are non-core matters based on Texas state law.  The Bankruptcy Court does not have subject matter jurisdiction to enter final orders on the claims alleged in the Complaint.  *Stern v. Marshall*, 131 S.Ct. 2594 (2011).  Although bankruptcy judges can hear and enter final orders in core matters, with respect to non-core matters, a bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court," with any final order or judgment entered by the district court, not the bankruptcy court.  *Wellness International Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1940 (2015).  The *Wellness* decision clarified that a bankruptcy judge may hear and finally determine so-called "*Stern* claims" — claims that bankruptcy judges are constitutionally prohibited from finally determining despite specific statutory authorization to do so — as long as the parties to the proceeding knowingly and voluntarily consent.  The Defendants do not consent to the entry of final orders by the Bankruptcy Court.

### III. BACKGROUND

3.  The Debtors filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on August 26, 2018 (the "Petition Date"). Pursuant to records filed with the Texas Secretary of State, Cesar Alcocer ("Mr. Alcocer") is the registered agent and director of Bebos, Inc., a Texas corporation. The Plaintiff alleges that the Debtors are the sole shareholders of Bebos and that all of the Debtors' interest in Bebos as well as all claims accruing to the Debtors and Bebos prior to the Petition Date are property of the Debtors' Estate.

4.  The Plaintiff further alleges that Rozmeen, Ismail, and Raheel Bhai hired Mr. Alcocer to perform repair work at the convenience store and gas station located at 2003 West 5th Street, Clifton, Texas (the "Property"), that Mr. Alcocer expected to be paid for this work, and that the Defendants, collectively, promised to pay him for his work.

5.  The Plaintiff further alleges that the Defendants carried out a plan to sell their convenience store to the Debtors, and that in the process "Rozmeen Bhai, Ismail Bhai, and Raheel Bhai made numerous fraudulent misrepresentations" to the Debtors, Bebos, and Newtek Small Business Finance, LLC ("Newtek"). The Plaintiff further alleges that "Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the gross revenue that the Property generated by overstating the gross sales figures for the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the profit that the Property generated by overstating the historical profit figures for the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the profit that the convenience store generated by overstating the historical profit generated by the convenience store; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the expenses necessary to operate the Property by understating the historical expenses for the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the present value of the Property by fraudulently overstating earnings and profit projections for the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the

value of the furniture, fixtures, and equipment located at the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently concealed and omitted material facts that they had a legal duty to disclose regarding the true annual and monthly revenue generated by the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently concealed and omitted material facts regarding the true annual and monthly expenses necessary to operate the Property that they had a legal duty to disclose; Rozmeen, Ismail, and Raheel Bhai fraudulently concealed and omitted material facts regarding the true annual and monthly profit generated by the Property that they had a legal duty to disclose; Rozmeen, Ismail, and Raheel Bhai fraudulently concealed and omitted material facts regarding the condition of the Property that they had a legal duty to disclose; Rozmeen, Ismail, and Raheel Bhai fraudulently concealed and omitted material facts regarding hidden defects present at the Property that they had a duty to disclose; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented that they would fix the roof of the property; and Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the market and business conditions applicable to the Property.

6. The Plaintiff further alleges that Rozmeen, Ismail, and Raheel Bhai fraudulently sought a Small Business Administration ("SBA") loan using the Debtors as the guarantors and their corporation Bebos, Inc. as the borrower. Plaintiff alleges that Rozmeen, Ismail, and Raheel Bhai made fraudulent misrepresentations in projections and in appraisals and other valuations of the Property, the furniture, fixtures, equipment, and personal property located at the Property, and the income generated by the Property.

7. Plaintiff further alleges that the Defendants collectively prevented Mr. Alcocer from interacting with the appraisers and Newtek, injected themselves as spokespersons for Mr. Alcocer and Bebos, Inc., and told Mr. Alcocer not to hire an attorney because an attorney would be too expensive and would slow down the process. The Plaintiff alleges that the Defendants told Mr. Alcocer that rather than pay him, they would sell him the Property at the discounted price of

DEFENDANTS' MOTION TO DISMISS- 4

$400,000.00.

8.  The Plaintiff further alleges that after the Defendants arranged for an SBA loan from Newtek on behalf of and in the name of the Debtors and Bebos, Inc., that the Defendants then arranged for the closing on the sale of the Property to the Debtors and Bebos, Inc. The Plaintiff alleges that the Defendants collectively "arranged not only for the Alcocers and Bebos, Inc. to sign a note and guarantees to Newtek, they also included a note payable to Rozmeen Bhai obligating Bebos, Inc. to pay another $333,130.00." Plaintiff alleges that: the total purchase price at closing was $1,210,400.00, including $540,000.00 for real property and fixtures and $670,400.00 for furniture, equipment, inventory, and goodwill and that the sale of the Property closed on or about March 28, 2018. The Plaintiff further alleges that, according to the settlement statement for the sale, Rozmeen Bhai received $333,889.50 for the real estate and $465,805.00 for all other assets for a total of $799,694.50 in cash at closing and that another $333,130.00 was included in the promissory note from Bebos, Inc. and payable to Rozmeen Bhai.

9.  Plaintiff alleges that the Defendants refused to turn over "credit card receipts (such as they were)" that "were Newtek's collateral for the loan proceeds" and instead "upon information and belief delivered electronically to their merchant account." Plaintiff further alleges that the Defendants took over the purchase of gasoline for the Property, promised to give the Debtors the revenue from sales of the gasoline less their cost of the gasoline, and instead the Defendants gave the Debtors invoices, claiming that Mr. Alcocer and Bebos, Inc. owed them money. Finally, the Plaintiff alleges that Rozmeen Bhai and Ismail Bhai cashed checks from the Bebos, Inc. account without authorization.

10. Plaintiff requests (i) Judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial; (ii) additional damages under Texas Civil Practice & Remedies Code §134.005(a)(1); (iii) exemplary damages against Defendants; (iv) pre-judgment interest at the

DEFENDANTS' MOTION TO DISMISS- 5

highest rate allowed by law; (v) post-judgment interest at the highest rate allowed by law, from the date of judgment until said judgment is completely satisfied; (vi) reasonable and necessary attorneys' fees; (vii) such other and further relief, general and special, at law or in equity, to which Plaintiff may be entitled.

## RELIEF REQUESTED AND THE BASIS THERFORE

11. Defendants move to dismiss all of Plaintiff's claims for lack of subject matter jurisdiction. They also move to dismiss all of Plaintiff's claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure made applicable in this case by Federal Rule of Bankruptcy Procedure 7012. Defendants also move to dismiss Plaintiff's common law fraud, fraudulent inducement, fraud by nondisclosure/omission, and statutory fraud claims for failure to plead them particularity as required by Rule 9 of the Federal Rules of Civil Procedure made applicable in this case by Federal Rule of Bankruptcy Procedure 7009.

**A. The Complaint should be dismissed because the Court lacks subject matter jurisdiction.**

12. In *Stern*, the Supreme Court recognized the bankruptcy court had statutory authority to render a final judgment on the debtor's compulsory counterclaim because it was a core proceeding under the bankruptcy code, but held the exercise of that authority an unconstitutional usurpation of the judiciary's power under Article III. ("Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress, in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984.") *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

13. The Constitution's system of separation of powers prohibits Congress from removing cases from the judiciary that are "the subject of a suit at the common law, or in equity, or admiralty." *Stern*, 131 S.Ct. at 2609. Discussing historical precedent, the Court held that "when a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' and

DEFENDANTS' MOTION TO DISMISS- 6

is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III Courts." *Stern* at 2609.

14. Article III courts are creations of the U.S. Constitution. Article III judges are appointed by the President of the United States, have lifetime appointments, and their salaries cannot be reduced by acts of Congress. Bankruptcy courts are not Article III courts. The *Stern* Court reasoned that because non-Article III courts do not offer the same assurances of an independent judiciary as Article III courts, they do not offer the same protections for both the judicial branch and individuals and therefore cannot hear all of the same claims an Article III federal court may hear. Additionally, bankruptcy courts, in exercising jurisdiction over core proceedings, do not act as adjuncts of Article III courts. Based on the authority Congress granted them, bankruptcy courts adjudicating core proceedings have broad authority to hear "all matters of fact and law in whatever domains of the law" and can enter final judgments, meaning they are not merely acting as adjuncts to the district courts. *Stern* at 2618-19. Since the bankruptcy courts are neither Article III courts nor adjuncts thereof, they generally may not hear claims that must be adjudicated by Article III courts.

15. There are exceptions to that rule. For Congress to allow a non-Article III court, like a bankruptcy court, to adjudicate claims that must normally be heard by an Article III court, the claim must fall within a recognized exception to Article III. The most frequently exception most frequently relied on is known as the "public rights" exception. Cases within the public rights exception historically involved disputes "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments," *Stern* at 2612, but has more recently evolved to include cases involving rights "integrally related to particular federal government action." *Stern* at 2613.

16. The Plaintiff's claims do not fall within the public rights exception. These are state law contract claims brought by the bankruptcy trustee to augment the bankruptcy estate, not

DEFENDANTS' MOTION TO DISMISS- 7

"creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 56 (1989). The reasoning in *Granfinanciera* was reaffirmed by *Stern* as the Court rejected the contention that the debtor's compulsory counterclaim fell under the public rights exception: *Granfinanciera's* distinction between actions that seek "to augment the bankruptcy estate" and those that seek "a pro rata share of the bankruptcy res," reaffirms that Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. *Stern*, 131 S.Ct. at 2618. Such language implies that bankruptcy actions tied to the claims allowance process would fall within the public rights exception as integrally related to federal administration of bankruptcy, while actions to augment the estate would not. Because the Plaintiff's state law claims are claims attempting to augment the estate, do not stem from the bankruptcy filing, and would not be resolved in the claims allowance process, they are arguably a private right that must be adjudicated by an Article III court.

17.   Because the bankruptcy court may not constitutionally hear the claims as core proceedings, and bankruptcy courts do not have statutory authority to hear them as non-core proceedings, any judgment entered by the Court on such claims is arguably void. The fact that a bankruptcy court does not have the constitutional authority to decide such cases means the bankruptcy court lacks subject matter jurisdiction that can be challenged even after judgment. Therefore, the Court should dismiss the Complaint for lack of subject matter jurisdiction.

**B.  Rule 12(b)(6) Standard of Review**

18.   Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), made applicable in this case by Bankruptcy Rule 7012 of the Federal Rules of Bankruptcy Procedure (FRBP), this Court should dismiss Plaintiff's lawsuit because Plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). The standard for

pleading is set forth in FRCP 8, made applicable in this adversary proceeding by FRBP 7008. The United States Supreme Court reiterated the legal standard for pleadings under Rule 8(a)(2):

> "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plan statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly* . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or a "formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of further factual enhancement."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). In resolving a 12(b)(6) motion, courts should neither "strain to find inferences favorable to plaintiffs" nor "accept conclusory allegations, unwarranted deductions, or legal conclusions." *See, e.g., R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005); *see also Twombly*, 550 U.S. at 555. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 f.3d 925, 931 (5th Cir. 1995). A motion to dismiss should be granted unless the pleadings allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1940 (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id.* at 1949.

19. The Supreme Court applies a two-pronged approach when considering the sufficiency of a party's claims. *See id.* at 1950. First, the court determines whether there are well-pleaded factual allegations, rather than mere legal conclusions, to which the court can apply the assumption of truth. *See id.* Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.

**C. Plaintiff's allegations for fraud, fraudulent inducement, and statutory fraud should be dismissed because Plaintiff failed to meet heightened pleading requirements.**

20. A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, 2011 WL 2312280, at *3 (N.D. Tex., June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.* 343 F.3d 719, 724 (5th Cir. 2003).

21. "The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation[,] the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Shandong Yinguang chem. Indus. Joint Stock Co. Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

22. To state a claim for fraudulent inducement under Texas law, a plaintiff must prove the basic elements of fraud as well as an underlying contract which was induced. *Kevin M. Ehringer Enters., Inc. v. McData*, 646 F.3d 321, 325 (5th Cir. 2011) (citing *Formosa Plastics Corp. USA v.*

*Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)). A fraud and fraudulent inducement claim are both subject to the heightened pleading requirement of Rule 9(b). *Potter*, 607 F.3d at 1032.

23. The elements of a claim for statutory fraud are set forth in Section 27.01 of the Texas Business & Commerce Code, which provides:

> (a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
> (1) false representation of a past or existing material fact, when the false representation is
>     (A) made to a person for the purpose of inducing that person to enter into a contract; and
>     (B) relied on by that person in entering into that contract; or
> (2) false promise to do an act, when the false promise is
>     (A) material;
>     (B) made with the intention of not fulfilling it;
>     (C) made to a person for the purpose of inducing that person to enter into a contract; and
>     (D) relied on by that person in entering into that contract.

Tex. Bus. & Comm. Code § 27.01.

24. It appears that, with respect to his fraud, fraudulent inducement, and statutory fraud claims, Plaintiff alleges that the Defendants "made numerous fraudulent misrepresentations" to the Debtors, Bebos, and Newtek Small Business Finance, LLC ("Newtek") including that they fraudulently misrepresented the gross revenue that the Property generated by overstating the gross sales figures for the Property, fraudulently misrepresented the profit that the Property generated by overstating the historical profit figures for the Property, fraudulently misrepresented the profit that the convenience store generated by overstating the historical profit generated by the convenience store, fraudulently misrepresented the expenses necessary to operate the Property by understating the historical expenses for the Property, fraudulently misrepresented the present value of the Property by fraudulently overstating earnings and profit projections for the Property, and fraudulently misrepresented the value of the furniture, fixtures, and equipment located at the Property. In addition,

the Plaintiff asserts that the Defendants fraudulently misrepresented that they would fix the roof of the property, and the market and business conditions applicable to the Property.

25. These allegations do not meet the heightened pleading requirements of Rule 9(b) with respect to the Plaintiff's fraud and fraudulent inducement claims. Specifically, the Plaintiff has failed to lay out "the who, what, when, where, and how" with respect to his fraud and fraudulent inducement claims. *Benchmark Electronics*, 343 F.3d at 724. "Articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177.

26. Instead of meeting this standard, the Complaint makes vague and conclusory allegations attributing all statements to all Defendants. The Complaint alleges that each Defendant made fraudulent misrepresentations but fails to state who said what. In addition, the Complaint is devoid of any details of when, where, and how the Defendants supposedly made these fraudulent misrepresentations. Plaintiff's fraud, fraudulent inducement, and statutory fraud claims must be dismissed for failure to meet the heightened pleading requirements of Rule 9(b).

**D. Plaintiff's allegations for fraud by Nondisclosure/Omission should be dismissed because Plaintiff failed to meet heightened pleading requirements.**

27. Fraud by nondisclosure is simply a sub-category of fraud. *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 853 (Tex. Ct. App. 4th District, San Antonio 2017). The elements of fraud by nondisclosure are: (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff

relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge. *Id.*

28. With respect to his fraud by Nondisclosure/Omission claims, the Plaintiff has alleged the Defendants fraudulently concealed and omitted material facts that they had a legal duty to disclose regarding the true annual and monthly revenue generated by the Property, the true annual and monthly expenses necessary to operate the Property, the true annual and monthly profit generated by the Property, the condition of the Property, and the hidden defects present at the Property.

29. The Complaint makes vague and conclusory allegations attributing all omissions to all Defendants. The Complaint fails to state which legal duty that the Defendants owed to the Debtors. In addition, the Complaint is devoid of any details of when, where, and how the Defendants supposedly were deliberately silent when they should have disclosed. The Complaint is devoid of any details as to why the Debtors had no equal opportunity to discover the facts as to the physical condition of the Property (which could have been determined by an independent inspection), or the annual and monthly revenue generated by the Property, or the expenses, or the profits (all of which could have been determined by independent verification of financial records). The Complaint alleges no facts that show the Debtors reasonably relied on any statements made by the Defendants. Most importantly, the Complaint does not give one specific example of where the Debtors relied upon a fact, which turned out to be untrue, and to which the Defendants deliberately remained silent. Plaintiff's fraud and fraudulent inducement claims must be dismissed for failure to meet the heightened pleading requirements of Rule 9(b).

    **E. Plaintiff's allegations for liability under the Texas Theft Liability Act should be dismissed for failure to state a claim.**

30. Under the Texas Theft Liability Act, section (2), " 'theft' means unlawfully appropriating property or unlawfully obtaining services as set out in section 31.03, 31.04, 31.05,

31.06, 31.07, or 31.11 of Chapter 31 of the Penal Code." Section 3 provides that "A person who commits theft shall be liable for the damages resulting from such theft.

    31.      Sec. 31.04 of the Penal Code addresses theft of service and provides:

THEFT OF SERVICE. (a) A person commits theft of service if, with intent to avoid payment for service that the actor knows is provided only for compensation:
(1) the actor intentionally or knowingly secures performance of the service by deception, threat, or false token;
(2) having control over the disposition of services of another to which the actor is not entitled, the actor intentionally or knowingly diverts the other's services to the actor's own benefit or to the benefit of another not entitled to the services;
(3) having control of personal property under a written rental agreement, the actor holds the property beyond the expiration of the rental period without the effective consent of the owner of the property, thereby depriving the owner of the property of its use in further rentals; or
(4) the actor intentionally or knowingly secures the performance of the service by agreeing to provide compensation and, after the service is rendered, fails to make full payment after receiving notice demanding payment.
(b) For purposes of this section, intent to avoid payment is presumed if:
(1) the actor absconded without paying for the service or expressly refused to pay for the service in circumstances where payment is ordinarily made immediately upon rendering of the service, as in hotels, campgrounds, recreational vehicle parks, restaurants, and comparable establishments;
(2) the actor failed to make payment under a service agreement within 10 days after receiving notice demanding payment;
(3) the actor returns property held under a rental agreement after the expiration of the rental agreement and fails to pay the applicable rental charge for the property within 10 days after the date on which the actor received notice demanding payment; or
(4) the actor failed to return the property held under a rental agreement:
(A) within five days after receiving notice demanding return, if the property is valued at less than $2,500; or
(B) within three days after receiving notice demanding return, if the property is valued at $2,500 or more.
(c) For purposes of Subsections (a)(4), (b)(2), and (b)(4), notice shall be notice in writing, sent by registered or certified mail with return receipt requested or by telegram with report of delivery requested, and addressed to the actor at his address shown on the rental agreement or service agreement.

Texas Penal Code § 31.04.

    32.      The Plaintiff has alleged no facts that the Debtors fulfilled the requirements of § 31.04. Specifically, the Plaintiff alleges no facts that as to (a)(4) that the actor intentionally or knowingly secures the performance of the service by agreeing to provide compensation and, after

the service is rendered, fails to make full payment after receiving notice demanding payment or that notice was provided in writing as required by the statute. Therefore, Plaintiff's allegations for liability under the Texas Theft Liability Act should be dismissed for failure to state a claim.

### F. Plaintiff's allegations for money had and received should be dismissed for failure to state a claim.

33.     Money had and received is an equitable doctrine applied to prevent unjust enrichment. *Edwards v. Mid-Continent Office Distribs.*, 252 S.W.3d 833, 837 (Tex. App. – Dallas 2008, pet. denied). The elements of a cause of action for money had and received are: (1) the defendant holds money; (2) the money belongs to the plaintiff in equity and good conscience. *See e.g.*, *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951).

34.     The Plaintiff alleges that the Debtors "were entitled to the credit card receipts (such as they were) and although the credit card receipts were Newtek's collateral for the loan proceeds, Rozmeen, Ismail, and Raheel Bhai refused to turn over the credit card receipts despite demand from Mr. Alcocer." Pleading additionally, the Plaintiff alleges that Rozmeen, Ismail, and Raheel Bhai hold money that in equity and good conscience belongs to Bebos and the Estate.

35.     The Plaintiff has failed to allege facts sufficient to satisfy the elements of his money had and received claim. Although the Plaintiff alleges that the Defendants have not turned over any of the credit card receipts, the Plaintiff has failed to allege facts to show that the Defendants holds any money and that, if they do hold money, the money belongs to the Debtors or Bebos. As to the additional pleading that Rozmeen, Ismail, and Raheel Bhai hold money that in equity and good conscience belongs to Bebos and the Estate, that is merely recitals of the elements of the cause of action, supported by mere conclusory statements, and does not suffice to state a claim. Therefore, the Plaintiff's claim for money had and received should be dismissed for failure to state a claim.

### G. Plaintiff's allegations for conversion should be dismissed for failure to state a claim.

36. To establish a claim for conversion, a plaintiff must prove the following elements: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) a defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Willis v. Smith*, 2011 Tex. App. LEXIS 7671, *1, 2011 WL 4398550.

37. In support for his conversion claim, the Plaintiff alleges that the Debtors "were entitled to the credit card receipts (such as they were) and although the credit card receipts were Newtek's collateral for the loan proceeds, Rozmeen, Ismail, and Raheel Bhai refused to turn over the credit card receipts despite demand from Mr. Alcocer. To this day, Rozmeen, Ismail, and Raheel Bhai have not turned over any of the credit card receipts from the Property generated after closing but upon information and belief delivered electronically to their merchant account."

38. The Plaintiff has failed to allege facts sufficient to satisfy the first element of his conversion claim. The Plaintiff fails to allege facts sufficient to show that the Debtors or Bebos owned the credit card receipts or were entitled to them. The Plaintiff admits that the Debtors did not have possession of the credit card receipts. In addition, the Plaintiff fails to allege facts to show that the Defendants unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner. Therefore, Plaintiff's conversion claim must be dismissed for failure to state a claim.

**H. Plaintiff's allegations for breach of contract should be dismissed for failure to state a claim.**

39. To prevail on its breach of contract claim, a plaintiff has to prove (1) the existence of a valid, enforceable contract between the parties; (2) that the plaintiff performed or tendered performance on that contract; (3) that the defendant breached the contract; and (4) that the plaintiff

sustained damages as a result of the breach. *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d at 853. A valid, enforceable contract exists when the following elements are shown: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Id.* at 853.

40. In support of his breach of contract claim, the Plaintiff alleges that Rozmeen, Ismail, and Raheel Bhai hired Mr. Alcocer to perform repair work at the convenience store and gas station located at the Property, that Mr. Alcocer expected to be paid for this work, and that the Defendants, collectively, promised to pay him for his work.

41. The Plaintiff has failed to sufficiently allege the first element of his breach of contract claim that there was a valid contract. There are no facts alleged as to the essential terms of the contract, the Defendants' consent to those terms, and the execution and delivery of the contract with the intent that it be mutual and binding. In addition, the Plaintiff has failed to allege facts sufficient to show either performance or tendered performance under the contract. Defendants are therefore entitled to dismissal of his breach of contract claim for failure to state a claim.

**I. Plaintiff's allegations for quantum meruit should be dismissed for failure to state a claim.**

42. The essential elements of a quantum meruit claim are: (1) the plaintiffs provided valuable services or materials for the defendants; (2) the defendants accepted the services or materials; and (3) the defendants had reasonable notice that the plaintiffs expected compensation for the services or materials. *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d at 853.

43. The Plaintiff has failed to sufficiently allege the first element of his quantum meruit claim. There are no facts alleged that any work that Mr. Alcocer may have done provided any value to the Defendants. Defendants are therefore entitled to dismissal of his breach of quantum meruit

claim for failure to state a claim.

## CONCLUSION

Plaintiff's claims should be dismissed because (1) the Court lacks subject matter jurisdiction over these non-core, state law claims; and (2) the Plaintiff has failed to state any claim upon which relief can be granted. Defendants request that: (a) the Complaint be dismissed; (b) all relief sought by the Plaintiff be denied; and (3) the Court grant the Defendants such other relief in law or in equity to which they may be justly entitled.

Respectfully submitted,

>ROSS & SMITH, PC
>700 North Pearl Street, Suite 1610
>Dallas, Texas 75201
>(214) 377-7879 Telephone
>(214) 377-9409 Fax
>
>By: */s/ Frances A. Smith*
>　　Frances A. Smith SBN 24033084
>　　Frances.smith@judithwross.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing requests has been served upon counsel for Plaintiff by certified mail return receipt requested and electronic mail on June 24, 2019.

Eric Zukoski
John Paul Stanford
Tim York
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

>　　*/s/ Frances A. Smith*
>　　Frances A. Smith